OPINION OF THE COURT
Norman C. Ryp, J.
A. ISSUE
Whether omission of an essential element (force) of a felony *607 (robbery in the second degree — Penal Law § 160.10) by defendant, represented by counsel, and the court during the factual allocution of a guilty plea to a prior felony conviction is legally sufficient as the constitutional basis for a predicate felony sentence? An issue of first impression in the First Department.
B. PROCEDURAL HISTORY
On November 30, 1983, defendant, Pierre Davis (Davis), was indicted for grand larceny in the third degree (Penal Law § 155.30 [5]). Davis was tried before this court and a jury, which rendered a guilty verdict on May 23, 1985.
Upon sentencing, the People filed a predicate felony statement. Under CPL 400.21, Davis, however, challenged the constitutionality of his previous conviction. A hearing was held on July 11, 1985, pursuant to CPL 400.21 (7) (a), to determine the constitutionality of defendant’s guilty plea. This written decision codifies and amplifies this court’s decision, dictated into the record on August 15, 1985, upholding the defendant’s constitutional challenge. This court sentenced Davis, as a first felony offender, to six months in prison and a 41/2A-year probationary term.
C. FACTUAL BACKGROUND
Previously, on January 18, 1977, in Supreme Court, Bronx County, Trial Term, Part 28 (Tonetti, Lawrence, J.), the defendant pleaded guilty to robbery in the second degree (Penal Law § 160.10). Such plea covered the entire indictments Nos. 2857/75 and 970/76.
Prior to allocution, the following interchange took place between the prosecutor, Mr. Scharf, and the court:
"Mr. Scharf: Your Honor, the defendant and his accomplice robbed Joseph Smith on October 15th, '75, and they used knives and they took money from him.
"The Court: Yes.
"Mr. Scharf: The People recommend that the plea be accepted.”
The court’s factual allocution of the defendant included the following:
"The Court: Do you admit that on October 15, 1975, together with another man, that you stole some property from one Joseph Smith here in Bronx County, do you admit that?
*608 "The Defendant: Yes.”
But apparently omitted the fact that the defendant wielded a knife or used force in the commission of the crime.
D. PARTIES’ CONTENTIONS
In support, defendant submits that the allocution was factually insufficient because it did not contain a statement of affirmation by the defendant that "force”, an essential element of the crime of robbery in the second degree, was used or threatened during the crime. Additionally, Davis contends the allocution was factually insufficient as to the lesser included offense of grand larceny in the third degree in that there was no statement or affirmation by the defendant that any property was taken from the complainant’s person.
In opposition, the People submit that, according to applicable case law, the allocution was sufficient absent a statement by the defendant on the use of force. The People further contend that the context of the allocution establishes that Davis knowingly pleaded guilty to robbery with the use of force, in that, during the preallocution colloquy, the prosecutor described for the court the crime where the defendant and his accomplice "used knives and they took money from [the victim]”.
E. APPLICABLE LAW
The content of a defendant’s allocution has been the subject of frequent judicial review, based upon: (1) waiver of defendant’s certain constitutional rights and (2) defendant’s statement of the factual circumstances underlying the crimes charged.
There is a general principle that the entire process of plea bargaining and admission of guilt by defendant must be a voluntary and intelligent choice among alternative courses of action (North Carolina v Alford, 400 US 25 [1970]). Generally, the validity of any waiver of rights must be tested according to constitutional standards (People v Parker, 57 NY2d 136, 141 [1982]; Johnson v Zerbst, 304 US 458, 464 [1938]).
Defendant need not be separately advised of and specifically waive all of his constitutional rights to (1) trial by jury, (2) the privilege against self-incrimination and (3) the right to confront one’s accusers (People v Harris, 61 NY2d 9, 18 [1983], citing Boykin v Alabama, 395 US 238 [1969]), if when the plea *609 is entered, the defendant sufficiently understands the nature of the charges, his right to trial by jury, the elements of the offense and the range of permissible offenses so as to "knowingly, voluntarily and intelligently” relinquish his constitutional rights upon the plea (People v Harris, supra, pp 17-18; see also, People v Sargent, 100 AD2d 978 [2d Dept 1984]). The plea cannot be voluntary unless the defendant obtains "notice of the true nature of the charge against him” (Henderson v Morgan, 426 US 637, 645 [1976], citing Smith v O'Grady, 312 US 329, 334 [1941]).
Although the Court of Appeals in People v Harris (supra) required that the defendant fully understand the connotation of the plea (People v Harris, supra, pp 18-19, citing Boykin v Alabama, supra), it did not give an explanation how the defendant would explicitly waive the enumerated constitutional rights. In 5 of the 6 cases consolidated under Harris, the court upheld the pleas determining that, despite the lack of specific waivers of all the described constitutional rights, the plea record revealed that each defendant understood the consequences of the plea, entered the plea voluntarily and "acknowledged” or "admitted” the facts underlying the offenses.
In noting the defendant’s recitation of the facts and by requiring that the defendant understand the elements underlying the crime, Harris indorses a line of cases stemming from People v Serrano (15 NY2d 304 [1965]), which mandated that the requisite elements of the crime appear in defendant’s recitation. Thereby, on this point, Harris undermines, if not overrules, the continued vitality of People v Nixon (21 NY2d 338 [1967]), consolidating People v Fooks, 21 NY2d 338, cert denied sub nom. Robinson v New York, 393 US 1067 [1969]).
Although People v Nixon and People v Serrano (supra) analyzed the validity of guilty pleas only in the context of attempts to directly set aside a current conviction, the general principles enunciated therein also are applicable to the context of a predicate felony sentencing hearing (People v Harris, 61 NY2d, at pp 16-17, citing People v Nixon, 21 NY2d, at pp 353, 355, for the general proposition that a ritualistic catechism of pleading defendant’s constitutional rights is not required). Further, the established principle that an attempt to set aside a conviction upon a guilty plea will fail in an appellate court if the issue(s) was (were) not raised and preserved in the court of first instance by a presentence motion to withdraw the plea (CPL 220.60 [3]) or postsentence *610 motion to vacate the judgment of conviction (CPL 400.21) (see, People v Claudio, 64 NY2d 858 [1985]; People v Pellegrino, 60 NY2d 636 [1983]) is not applicable in the predicate felony sentencing situation (People v Harris, supra, p 16).
While the People have the burden of proving beyond a reasonable doubt the existence of a previous felony conviction, the defendant must prove facts that establish that such conviction was unconstitutionally obtained (People v Harris, supra, p 15; CPL 400.21 [7] [a], [b]).
It must be emphasized that, in each situation, the consequences of an unfavorable review of the plea allocution is distinct and distinguishable, in fact and law. If a plea is not upheld upon the motion to set aside an original conviction, then that conviction is overturned and defendant is at liberty. In contrast, if the plea upon a prior conviction is not upheld in the predicate sentencing situation, the consequence is a shorter sentence, as a first (instead of a predicate or persistent) felon, upon the subsequent conviction.
This court does not seek to penalize society by an unreasonably narrow application of constitutional principles in the original conviction situation. These resulting penalties are the costs of reprosecuting the defendant a second time and the ensuing delay by the eventual appeal which would deny fair, swift and certain justice, under an administrative cost-benefit analysis. Further, this court decision does not, by content or consequences, increase the fear that successful challenges of plea convictions after guilty pleas will unravel the entire criminal justice system. Society is not so penalized nor is the plea bargaining system so threatened in the predicate sentencing (second or third conviction) situation by simply requiring that the court carefully enforce a defendant’s constitutional rights during a guilty plea allocution.
The First and Second Departments have rendered divergent opinions on the necessity for a complete factual allocution by a defendant upon a guilty plea. The First Department has approvingly cited People v Serrano (supra), requiring that a defendant’s recital include the "requisite elements” of the crime (see, People v Gillard, 111 AD2d 666 [1st Dept 1985]; People v Rockwood, 78 AD2d 845 [1st Dept 1980]; People v Lebron, 68 AD2d 836 [1st Dept 1979]; cf. People v Pascale, 66 AD2d 653 [1st Dept 1978], affd on other grounds 48 NY2d 997 [1980] [see, Fein, J., dissent, p 654]). In contrast, the Second Department has produced a long line of cases citing People v *611 Nixon (supra), holding a guilty plea without such a factual recitation if there is no suggestion "in the record or dehors the record that the guilty plea was improvident or baseless” (People v Nixon, 21 NY2d, at p 350; see, e.g., People v Torres, 111 AD2d 837 [2d Dept 1985]; People v Green, 111 AD2d 349 [2d Dept 1985]; People v Cheek, 111 AD2d 250 [2d Dept 1985]; People v Perkins, 89 AD2d 956 [2d Dept 1982]) particularly where defendant was actively represented by counsel and made no effort to withdraw the guilty plea.
If the defendant does not make any factual recitation on the record, however, how can a subsequent court reviewing the plea transcript, upon appeal, or at a predicate/persistent felony sentencing have a reasonable and constitutional basis to determine that a knowing and voluntary choice was made by defendant? As such, the consequence of Nixon/Fooks is most disturbing.
In Harris, the court apparently recognized this problem of dealing with the distinct question of the adequacy of defendant’s waiver of constitutional rights; it upheld the defendant’s pleas (except Vargas) and specifically included in its reasoning that the defendant in each case had "acknowledged” or "admitted” the facts of the offense (People v Harris, supra, pp 20-22). The court unequivocally stated that the "Trial Judge has a vital responsibility 'to make sure [that the accused] has full understanding of what the plea connotes and of its consequence’ ” (People v Harris, 61 NY2d, at p 19, citing Boykin v Alabama, supra, at p 244).
However difficult it is for the original sentencing Judge or Justice to be assured of defendant’s understanding of the plea and its consequences without eliciting from defendant a recitation, on the record, of the facts to which defendant admits, it is nearly impossible for the second or third sentencing Judge or Justice, wholly dependent upon the original allocution transcript, to be constitutionally assured that defendant was actively or effectively represented by counsel, especially in a busy Conference Part with an enormous calendar, as herein, or a future 1986 individual assignment (IA) growing calendar.
The rush to indorse guilty pleas may be related to administrative policy in an overloaded criminal justice system substantially subsidized by plea bargaining; however, the administration of justice must never yield to an injustice of administration. Even while affirming the plea in Nixon, the Court of Appeals felt constrained to note that "[w]hile the essence of *612 justice may be procedure there can be a point at which the administration of justice becomes only procedure and the essence of justice is lost.” (People v Nixon, supra, p 365.)
As noted, the issue presently before the court is one of apparent first impression. It centers on the adequacy of the factual recitation during a defendant’s allocution at a prior conviction for purposes of establishing predicate status in the present case and imposing a harsher sentence. Such is distinct from, but related to, the issue in People v Harris involving waiver of constitutional rights. Although the Appellate Division, Second Department, cases cited previously are nearly on point, this court respectfully disagrees and declines to follow same as not controlling (see, e.g., People v Wages, 111 AD2d 198 [2d Dept 1985]; People v Perkins, 89 AD2d 956 [2d Dept 1982], supra).
Thus, defendant, who did not admit using "force”, an essential element under Penal Law § 160.10, did not knowingly and voluntarily plead guilty to the violent felony of robbery in the second degree. Surely, defendant did not adopt nor incorporate his adversarial prosecutor’s previous remarks to the court, which referred to the use of a knife during the robbery. If so adopted, the question is relevantly raised whether defendant was actively or effectively represented by counsel. This court does not reach, as moot, defendant’s additional contention that the factual allocution as to the lesser included offense of grand larceny in the third degree (Penal Law § 155.30) was constitutionally insufficient.
F. CONCLUSION
Thus, this court, under the established First Department, Appellate Division and Court of Appeals precedents, relies on People v Serrano (supra) and People v Harris (supra) in determining that the defendant’s prior plea allocution was insufficient to serve as the constitutional basis for a predicate felony sentence, and cannot enhance defendant’s sentence herein. Thus, for the reasons set forth hereinabove, this court determines, as a matter of fact and law, that defendant sustained his burden of proof under CPL 400.21.
Accordingly, defendant’s CPL 400.21 constitutional challenge is upheld and defendant shall be sentenced as a first felony offender.